## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**JOEL ADOLFO BORJAS-HERNANDEZ,**

      **Movant,**

                               **Civil Action No. 3:12-cv-08368**
**v.**                            **(Criminal No: 3:09-cr-00163)**

**UNITED STATES OF AMERICA,**

      **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (ECF No. 128). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this action be **DISMISSED, with prejudice,** and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## I.    Factual Background

On September 23 and 24, 2007, law enforcement officers in and around

1

Huntington, West Virginia responded to the scenes of three fatal heroin overdoses involving individuals named Patrick Byars, Adam Johnson, and George Shore. (ECF No. 129 at 6; ECF No. 134 at 1). At these scenes, and at other recent investigations of non-fatal overdoses in the area, officers found black tar heroin wrapped in a distinctive manner using plastic bags and foil. (ECF No. 134 at 2). Suspecting that the heroin was coming from a single source, a team of investigators headed by DEA Special Agent Tom E. Bevins began to trace the black tar heroin pipeline into Huntington. (ECF No. 129 at 6). Starting with a local dealer, Paul Dempsey, investigators learned that Huntington dealers and users purchased Mexican black tar heroin from two suppliers living in Columbus Ohio, Rick Jordan and Robert Melrose. Jordan and Melrose obtained the heroin from a source in Columbus known as "Carlos." (ECF No. 129 at 6; ECF No. 134 at 3). Cooperating witnesses subsequently identified Carlos from a photograph taken by the Ohio Bureau of Motor Vehicles, which corresponded to a driver's license issued in June 2006 bearing the name of Columbus resident "Jose Hernandez-Salazar." As it turned out, Jose Hernandez-Salazar was an alias used by Movant, Joel Adolfo Borjas-Hernandez ("Borjas-Hernandez"). (ECF No. 134 at 3).

Over the next six months, Bevins pursued Borjas-Hernandez, eventually obtaining the cooperation of both Jordan and Melrose in the investigation. (ECF No. 134 at 4-5). Jordan and Melrose confirmed that they were part of a distribution chain that supplied black tar heroin to individuals in Huntington, including Paul Dempsey and Michelle Byars, the wife of overdose victim, Patrick Byars. ((ECF No 134-10 at 13-14). Jordan, a former Huntington resident, began supplying heroin to his hometown after moving to Columbus. According to Jordan, when someone from Huntington wanted

2

heroin, they called him, and he called Carlos. He would tell Carlos that "his people from West Virginia" were coming to town. Carlos would tell Jordan to call when they arrived and would then send a runner to meet Jordan and the West Virginians to make the transaction. (*Id.*). Melrose became involved in the business later, usually by intercepting Jordan's West Virginia customers on their way to Jordan's residence, and then stealing their business by agreeing to undercut Jordan's resale prices. (Id. at 21-22). With the help of Jordan and Melrose, Bevins made controlled purchases of heroin from Carlos, whom Jordan and Melrose positively identified as Borjas-Hernandez from the BMV photograph of Jose Hernandez-Salazar. (ECF No. 134-10 at 19, 21).

When Bevins felt he had accumulated enough evidence to connect the black tar heroin distributed by Borjas-Hernandez's organization to the fatal overdoses in Huntington, he swore out a criminal complaint against Borjas-Hernandez in the Southern District of West Virginia. ((ECF No. 128-4 at 2-4). On June 16, 2009, Borjas-Hernandez was arrested in Columbus on a suspected immigration violation and was subsequently transported to Huntington on the federal complaint.

## II.  <u>Procedural History</u>

On July 8, 2009, Borjas-Hernandez was indicted by a federal grand jury on one count of conspiracy to distribute 100 grams or more of heroin, which resulted in the death of an individual in violation of 21 U.S.C. § 846. (ECF No. 5). On August 24, 2010 Borjas-Hernandez pleaded guilty to an information containing one count of conspiracy to distribute 1 kilogram or more of heroin in violation of 21 U.S.C. § 846, pursuant to a plea agreement in which the Government agreed to dismiss the original indictment. (ECF Nos. 77, 113).

A pre-sentence investigation report was prepared by a United States probation officer on October 26, 2010, and revised on December 14, 2010. (ECF No. 137 at 1). The base offense level for distribution of 1 to 3 kilograms of heroin was 32 under U.S.S.G. § 2D1.1(c)(4), but the probation officer assigned a base offense level of 38 under U.S.S.G. § 2D1.1(a)(2), on the ground that "applicable relevant conduct establishes that the death of Patrick Byars resulted from the use of heroin distributed" by Borjas-Hernandez. (*Id.* at 16). Borjas-Hernandez received a four-level increase under U.S.S.G. § 3B1.1(a) because he was "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive," which resulted in an adjusted offense level of 42. (*Id.* at 16-17). Borjas-Hernandez received a two-level decrease for acceptance of responsibility under U.S.S.G. § 3E1.1(a), which resulted in a total offense level of 40. (*Id.* at 17). Borjas-Hernandez had zero criminal history points, and a criminal history category of I. (*Id.* at 17). Thus, his corresponding sentencing guideline range was between 292 and 365 months imprisonment. (*Id.* at 20). Borjas-Hernandez objected to the calculation of his base offense level as 38 on the ground that there was "no proven link between the defendant's actions and the death." (ECF No. 137 at 24). Borjas-Hernandez also objected to the relevant conduct attributed to him and to his managing role in the offense on the ground that the investigation had uncovered multiple individuals known as "Carlos" who sold similarly packaged black tar heroin in the Columbus area. (*Id.* at 23-24). The probation officer declined to accept any of Borjas-Hernandez's objections. (*Id.* at 23-25).

Borjas-Hernandez's sentencing hearing was held on January 18, 2011. (ECF No. 114). The Government presented testimony from various witnesses including, DEA

4

Agent Tom Bevins, Robert Melrose, Michelle Byars, and Huntington Police Sergeant David Castle, to establish Borjas-Hernandez's identity and involvement in the conspiracy, and the resulting death attributed to him. (*Id.* at 6-94). The District Court rejected Borjas-Hernandez's objections and adopted the presentence report and addendum in full, noting the recommended sentencing guideline range of 292 to 365 months imprisonment. (*Id.* at 108-10). The District Court denied Borjas-Hernandez's request for a downward variance, (*Id.* at 112-13), and sentenced him to 292 months imprisonment. (*Id.* at 123).

On February 1, 2011, Borjas-Hernandez appealed his conviction to the Fourth Circuit Court of Appeals. (ECF No. 101). The Fourth Circuit affirmed Borjas-Hernandez's conviction on October 25, 2011, (ECF No. 117, 118, 119), and his judgment took effect on December 7, 2011. (ECF No. 122). On November 30, 2012, Borjas-Hernandez timely filed the instant Petition to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, (ECF No. 128), and on January 24, 2013, the United States filed a Response in Opposition. (ECF No. 134).

## III.   Movant's Grounds to Vacate, Set Aside, or Correct His Sentence

Borjas-Hernandez asserts that his sentence was "based on materially false information in violation of his due process constitutional rights" under the Fifth Amendment. (ECF Nos. 128 at 4, 129 at 43). Borjas-Hernandez also argues that he received ineffective assistance of counsel, on the grounds that trial counsel (1) failed to "challeng[e] the geographical jurisdiction and venue of the Southern District of West Virginia" when the crime he allegedly committed occurred in Ohio, (ECF No. 129-1 at 12); (2) misadvised Borjas-Hernandez to plead guilty when he was "factually innocent,"

(*Id.* at 22); and (3) failed to present the court with exculpatory evidence during the sentencing hearing and did not properly argue against the application of U.S.S.G. §2D1.1(a)(2). (*Id.* at 38-39). Borjas-Hernandez further alleges that he received ineffective assistance of appellate counsel for failing to investigate and argue that he was "factually innocent" of the death of Patrick Byars, or to otherwise challenge the applicability of U.S.S.G. § 2D1.1(a)(2). (*Id.* at 41-43).

## IV.   <u>Standard Under 28 U.S.C. §2255</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence imposed in a separate proceeding. *Wall v. Kholi*, 131 S.Ct. 1278, 1284-85, 179 L.Ed.2d. 252 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. Because a § 2255 motion seeks to deny, evade, or impeach a judgment, claims of error that have previously been raised and rejected on a direct appeal of the judgment may not be raised again in a § 2255 motion. *United States v. Harrison*, No. 96-7579, 1997 WL 499671, at *1 (4th Cir. Aug. 25, 1997) (citing *Boeckenhaupt v. United States*, 537 F.2d 1182, 1183 (4th Cir. 1976).

Nonetheless, a § 2255 motion is not an alternative to filing a direct appeal. *United States v. Frady,* 456 U.S. 152, 165, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). "Nonconstitutional claims that *could* have been raised on direct appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477, n.10, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (emphasis added); *see also United States v.*

*Linder*, 552 F.3d 391, 396-97 (4th Cir. 2009) ("Where the petitioner only waives the right to appeal, he is not precluded from filing a petition for collateral review. But he is precluded from raising claims that are the sort that *could have* been raised on appeal.") (quoting Brian R. Means, *Fed. Habeas Practitioner Guide,* Jurisdiction ¶ 1.23.0 (2006/2007)) (emphasis in the original). Nonconstitutional claims that *could not* have been asserted on direct appeal may be raised in a § 2255 motion only if the alleged error constituted "a fundamental defect which inherently results in a complete miscarriage of justice" *Stone*, 428 U.S. at 477 n.10 (quoting *Davis v. United States*, 417 U.S. 333, 346, 94 S.Ct. 2298, 41 L.Ed.2d 109 (1974); *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962)) or is "inconsistent with the rudimentary demands of fair procedure." *United States v. Timmreck*, 441 U.S. 780, 784, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979).

Similarly, a constitutional error that could have been, but was not raised on appeal may not be raised for the first time in a § 2255 motion, unless the movant can show either (1) "cause" that excuses the failure to raise the error on appeal and "actual prejudice" resulting from the error; or (2) that a miscarriage of justice would occur if the court refuses to entertain the collateral attack. *Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *Bousley v. United States*, 523 U.S. 614, 621-22, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998); *Frady,* 456 U.S. at 167-68; *United States v. Mikalajunas,* 186 F.3d 490, 492-93 (4th Cir. 1999). To establish "actual prejudice," the movant must show that the alleged error resulted in an "actual and substantial disadvantage," rather than a mere possibility of prejudice. *Satcher v. Pruett,* 126 F.3d 561, 572 (4th Cir. 1997) (quoting *Murray v. Carrier,* 477 U.S. 478, 494, 106

S.Ct. 2639, 2648 (1986)). To demonstrate a miscarriage of justice, the movant must prove "actual innocence" of the crime for which he was convicted, substantiating that "it is more likely than not, in light of all the evidence, that no reasonable juror would have convicted him." *Bousley,* 523 U.S. at 623 (quoting *Schlup v. Delo,* 513 U.S. 298, 327-28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

A guilty plea further diminishes the scope of potential claims available under § 2255. A voluntary and intelligent guilty plea amounts to an admission of the material elements of the charged crime, *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); consequently, it constitutes a waiver of *all claims* relating to non-jurisdictional errors that occurred prior to the plea, including claims relating to alleged constitutional deprivations. *United States v. Moussaoui,* 591 F.3d 263, 279 (4th Cir. 2010); *Tollett v. Henderson,* 411 U.S. 258, 267, 93 S.Ct. 1602, 36 L.Ed.2d 235 (1973)). "Thus where a defendant does not challenge the jurisdiction of the court's power to enter the conviction or impose the sentence, the [§ 2255] inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *United States. v. Fabian*, 798 F.Supp.2d 647, 669 (D. Md. 2011) (quoting *United States v. Broce,* 488 U.S. 563, 569, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)) (internal quotations omitted); *see also Tollett*, 411 U.S. at 266 (holding that in the context of a guilty plea, the "focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea not the existence as such of an antecedent constitutional infirmity").

Under the Rules Governing Section 2255 Proceedings, the reviewing court must examine the motion, answer, any transcripts and record of prior proceedings, and any other materials supplied by the parties to determine the need for an evidentiary hearing.

If the motion can be resolved based on the record before the court, an evidentiary hearing is unnecessary. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). With this framework in mind, the undersigned examines each of Borjas-Hernandez's allegations.

## V.    <u>Discussion</u>

### A. **Actual Innocence / Materially False Information**

Borjas-Hernandez argues that the District Court relied upon "materially false information" in determining that death or serious bodily injury resulted from the use of the substance he distributed, pursuant to U.S.S.G. § 2D1.1(a)(2). (ECF No. 129 at 43). Borjas-Hernandez argues that "he is factually innocent of the accusation that Patrick Byars' death resulted from the use of the heroin that Movant allegedly distributed to Jordan, and Jordan to Michelle Byars on or about September 18, 2007." (ECF No. 129-1 at 3). However, rather than identifying any specific information that he alleges to be materially false, Borjas-Hernandez offers a series of foreign documents and affidavits which purport to establish that he was "in fact residing in Nayarit, Mexico during the period of time that he allegedly distributed the heroin that cause[d] the overdose death of Patrick Byars, and therefore couldn't be the Carlos that distributed to Jordan the heroin, which cause[d] the death of Patrick Byars." (*Id.* ). Borjas-Hernandez further asserts that he "did not have any agreement whatsoever with Jordan or Melrose to violate the conspiracy laws of the controlled substance act other than seller/buyer relationship because Jordan and Melrose were only drug addicts [sic] customers that bought heroin doses which the affiant treated as any other regular drug addict customer that came to buy heroin doses to cure their addiction." (ECF No. 128-19 at 13). Borjas-

9

Hernandez's argument is unpersuasive.

First, if Borjas-Hernandez is attempting to argue that he is actually innocent of the offense for which he was convicted, he has failed to produce clear and convincing evidence that his guilty plea "has probably resulted in the conviction of one who is actually innocent." *Bousley,* 523 U.S. at 623-24. To the extent Borjas-Hernandez's claims of innocence rest on allegations that directly contradict sworn statements made during a properly conducted Rule 11 colloquy, those allegations may be disregarded as palpably incredible and entirely unreliable. *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005).

Borjas-Hernandez was convicted of conspiracy to distribute over 1 kilogram or more of heroin, in violation of 21 U.S.C. § 846, pursuant to a plea agreement in which he unequivocally stipulated to having been "part of an organization involved in trafficking 'black tar heroin' in and around Columbus, Ohio, Huntington, West Virginia, and elsewhere," during which time his role in the organization "was to supply street-level dealers with distribution quantities of heroin," and that he "knew that certain quantities of the heroin he provided was frequently distributed and ingested in Huntington, Cabell County, West Virginia." (ECF No. 77 at 9). At his Rule 11 hearing, Borjas-Hernandez admitted to being part of a conspiracy through which he sold heroin "for several months" broken up "over several years and within that time frame" of 2003 to 2008. (ECF No. 113 at 18-19). Borjas-Hernandez confirmed that while in Columbus, Ohio, he served as a middleman for two brothers in Columbus who were receiving heroin from Mexico. (*Id.* at 23-26). He admitted that the brothers would provide Borjas-Hernandez with heroin, and then instruct him to meet individual clients at prearranged locations in

order for them to buy the heroin from him, and that this occurred in Columbus. (*Id.*). In response to the District Court's inquiry if he "believe[d] that the people [he] sold heroin to were going to take the heroin and themselves distribute or sell the heroin to other people," Borjas-Hernandez stated "I think so." (*Id.* at 25). Borjas-Hernandez further agreed that "some of this heroin that was being purchased through [his] client in Columbus was being brought to Huntington, West Virginia and either used or resold." (*Id.* at 26-27). Borjas-Hernandez confirmed that the amount of heroin that the Government could prove he was directly involved in distributing was between 1 and 3 kilograms. (*Id.* at 27).

Borjas-Hernandez now alleges that he only sold heroin to Jordan and Melrose in their capacities as drug users, as opposed to lower level distributors. (ECF No. 128-19 at 13). However, he does not deny or otherwise refute his Rule 11 hearing statements regarding his relationship with the two brothers who served as heroin sources, or that he was aware that some of the individuals he sold heroin to were then distributing it to other users. Considering the record before the Court, the undersigned **FINDS** Borjas-Hernandez's claim of innocence to be "so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *United States v. White,* 366 F.3d 291, 296-97 (4th Cir. 2004).

Second, Borjas-Hernandez fails to establish that his sentence was unconstitutional due to "materially false information." It is well-established that "[d]ue process forbids reliance on materially false or unreliable information in imposing sentence" on a criminal defendant. *United States v. Watson*, No. 92-6763, 1993 WL 425128, at *2 (4th Cir. Oct. 21, 1993) (citing *Townsend v. Burke*, 334 U.S. 736, 741, 68

S.Ct. 1252, 92 L.Ed. 1690 (1948)); *see also United States v. Dalzell*, 455 F. App'x 306, 310-11 (4th Cir. 2011). In order to demonstrate a due process violation based upon materially false information, "the defendant must show *both* that the challenged information is false, and the false information was relied on by the court in sentencing." *United States v. Martindale*, No. 88-7250, 1990 WL 33902, at *1 (4th Cir. Mar. 20, 1990); *see also United States v. Mack*, No. 95-6964, 1996 WL 333295, at *1 (4th Cir. 1996) (citing *United States v. Rachels*, 820 F.2d 325, 327-28 (9th Cir. 1987)); *Watson*, 1993 WL 425128, at *2. However, "even an erroneous judgment, based upon a scrupulous and diligent search for truth, may be due process of law." *Townsend*, 334 U.S. at 741.

In the instant case, the District Court assigned Borjas-Hernandez a base offense level of 38 pursuant to U.S.S.G. § 2D1.1(a)(2), in light of the September 23, 2007 death of Patrick Byars. (ECF No. 114 at 109). Michelle Byars testified that two days prior to September 23, 2007, she traveled to Columbus, Ohio and obtained heroin from Jordan, which she understood to be supplied by Borjas-Hernandez's organization. (*Id.* at 84-85). Ms. Byars stated that on September 23, 2007, she and her husband Patrick Byars used the heroin she had obtained in Columbus, after which she passed out and "woke up with him dead on [her] arm." (*Id.* at 84). Borjas-Hernandez now alleges that he was "in fact in Nayarit, Mexico during the entire period of October, 2006 through June, 2009," (ECF No. 128-19 at 13), and therefore "couldn't be the Carlos that distributed to Jordan the heroin, which cause[d] the death of Patrick Byars." (ECF No. 129-1 at 3). This argument is unavailing.

To begin with, it is not at all clear that the information presented to the District Court regarding Borjas-Hernandez's whereabouts was indeed "materially false." During the plea hearing, DEA Agent Tom Bevins testified extensively about Borjas-Hernandez's role in the conspiracy, noting that "Melrose describe[d] dealing with the defendant for a number of years, perhaps as far back as 2003," and that although he was originally "merely a runner" for the organization, "by 2007, the defendant had risen to the position" of orchestrating deliveries. (ECF No. 113 at 32). At the conclusion of Agent Bevins's testimony, Borjas-Hernandez confirmed that Agent Bevins's description of his role in the conspiracy was substantially accurate. (*Id.* at 38-39). During the sentencing hearing, Agent Bevins again testified that following the September 2007 deaths, he began working in an undercover capacity with Jordan, (ECF No. 114 at 15-16), who had identified a photo of Borjas-Hernandez as "Carlos," and advised Agent Bevins that he "was his supplier for the past couple of years who supplied heroin who ultimately sent it to Southern West Virginia." (*Id.* at 21).[1] Melrose himself testified to initially meeting Borjas-Hernandez in 2001, (*Id.* at 52-53), and then becoming reacquainted with him in 2003 or 2004, following a term of imprisonment. (*Id.* at 56). Melrose described in detail his interactions with Borjas-Hernandez and other members of the conspiracy, and testified that his relationship with Borjas-Hernandez continued through July 2008, at which point Melrose was arrested. (*Id.* at 57-67). Based upon this information, the District Court found that the Government "met its burden of establishing that heroin supplied by this defendant resulted in the death of Patrick Byars." (*Id.* at 105).

---

[1] Jordan apparently passed away prior to the date of Borjas-Hernandez's guilty plea. (ECF No. 113 at 31).

In contrast, most of the official documents Borjas-Hernandez offers in support of this claim are inconclusive as to his location around the time of Patrick Byars's death, in that they relate to time periods other than September 2007. (ECF No. 129-1 at 5-6). The only official document which purports to establish his whereabouts in September 2007 is a birth certificate of Hilary Metzeri Borjas-Ocampo, dated September 10, 2007, on which Borjas-Hernandez's signature is seemingly affixed. (ECF No. 128-14 at 2, 6). However, as the Government notes, the authenticity of the signature is in question given that "a comparison of that signature with the signature of defendant's plea agreement or the instant motion" demonstrates that the handwriting is different. (ECF No. 134 at 23). Even if Borjas-Hernandez were in Mexico on September 10, 2007, it does not prove that he was also there one to two weeks later when Michelle Byars purchased the heroin that led to the death of Patrick Byars. Additionally, Borjas-Hernandez offers several statements from various individuals who claim that he was residing and working in Mexico in 2007 and 2008. (ECF Nos. 128-13, 128-15 at 2). Although Borjas-Hernandez argues that both his trial counsel and appellate counsel failed to "contact his wife in Mexico, and have her send him documentation providing that the Movant was in fact in Mexico" during this time, (ECF No. 129-1 at 3), he is notably silent as to why he failed to raise the argument at sentencing or on appeal, even without the documentation. Furthermore, "no one supposes that a defendant can relitigate any issue of fact at any time he or she likes merely by invoking the due process clause and offering to show that a mistake was made." *United States v. Dupont*, 15 F.3d 5, 7 (1st Cir. 1994). Here, the District Court "based on the information available, drew inferences from the facts and made factual findings" warranting the application of U.S.S.G. § 2D1.1(a)(2). *Cargill v.*

*Rapelje*, No. 2:11-CV-11360, 2012 WL 6808514, at *10 (E.D. Mich. Nov. 30, 2012). While Borjas-Hernandez now disputes these findings, he has failed to establish that they were indeed materially false.

Moreover, even assuming Borjas-Hernandez could demonstrate that he was in Mexico on the date of the heroin transaction that ultimately resulted in the death of Patrick Byars, the fact that he may not have actively participated in the death-causing heroin transaction is irrelevant for the purposes of U.S.S.G. § 2D1.1(a)(2). *See United States v. Harris*, Nos. 88-5663 to 88-5667 and 88-5691, 1990 WL 27340, at *8 (4th Cir. Feb. 26, 1990); *see also United States v. Ortiz*, Nos. 93-5473 to 93-5478, 93-5488, 93-5504, 93-5505, 1995 WL 234276, at *3 (4th Cir. 1995) (holding that "a finding that death resulted from conduct that was within the scope of the agreement and was reasonably foreseeable to the individual conspirators is sufficient to render § 2D1.1(a)(1)-(2) applicable"). Borjas-Hernandez admitted to participating in the Columbus heroin conspiracy, which the District Court found was responsible for supplying the heroin that resulted in the death of Patrick Byars. (ECF No. 114 at 105-08). Borjas-Hernandez contests only that he was directly involved in the relevant transaction, but does not deny that Patrick Byars's death resulted from the use of heroin obtained from his organization. Accordingly, the District Court appropriately applied U.S.S.G. § 2D1.1(a)(2) in determining Borjas-Hernandez's sentence. *See United States v. Nnani*, No. 91-5180, 1992 WL 374021, at *4 (4th Cir. 1992) ("Where serious bodily injury or death results from the distribution of drugs, Congress has chosen to enhance a defendant's sentence regardless of whether the defendant knew or should have known that death would result.").

Therefore, the undersigned **FINDS** that Borjas-Hernandez has failed to establish that the District Court's relied upon materially false information during sentencing which deprived him of due process of law.

### B. Ineffective Assistance of Trial Counsel

In this case, Borjas-Hernandez attacks his conviction and sentence on the ground that he was denied his Sixth Amendment right to effective assistance of counsel because trial counsel: (1) failed to "challeng[e] the geographical jurisdiction and venue of the Southern District of West Virginia" when the crime he allegedly committed occurred in Ohio. (ECF No. 129-1 at 12); (2) misadvised Borjas-Hernandez to plead guilty when he was "factually innocent." (*Id.* at 22); and (3) failed to present the court with exculpatory evidence during the sentencing hearing and did not properly argue against the sentencing enhancement for resulting death. (*Id.* at 38-39).

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel during critical stages of criminal proceedings, *Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), including sentencing, *see Glover v. United States,* 531 U.S. 198, 203-04, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001), and direct appeal. *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). While assistance "which is ineffective in preserving fairness does not meet the constitutional mandate," *Strickland,* 466 U.S. at 685-86, "defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." *Mickens v. Taylor,* 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2001).

Under *Strickland*, a defendant can prove ineffective assistance of counsel by

meeting the requirements of a two-prong test. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994). First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. When evaluating counsel's performance under the first prong of *Strickland,* "judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 788, 178 L.Ed.2d 624 (2011) (internal quotations omitted).

The second prong of the *Strickland* test requires the defendant to affirmatively establish prejudice; that is, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. In the context of sentencing, prejudice is established if the defendant demonstrates a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence. *Glover,* 531 U.S. at 203-04; *United States v. Harris,* No. 3:12-CV-127, 2013 WL 4749903, at *7 (E.D. Va. Sept. 3, 2013). In the context of an unsuccessful appeal, the prejudice prong is satisfied when the defendant shows a reasonable probability that, but for his counsel's failure to raise a particular

issue, he would have prevailed on the appeal. *Smith v. Robbins*, 528 U.S. 259, 285-86, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000).

### 1. Objection to Venue

Borjas-Hernandez argues that trial counsel provided ineffective assistance "for not challenging the geographical jurisdiction and venue of the Southern District of West Virginia." (ECF No. 129-1 at 12). Borjas-Hernandez argues that "because the offense in this matter allegedly occurred in Columbus, Ohio, the United States was, in fact, required to conduct the prosecution in the United States District Court for the Northern District of Ohio,"[2] pursuant to 18 U.S.C. § 3232 and Rule 18 of the Federal Rules of Criminal Procedure. [3] (ECF No. 129-1 at 15). This argument is without merit.

Borjas-Hernandez is correct that in general and "[u]nless a statute or these rules permit otherwise, the government must prosecute an offense in a district where the offense was committed. Fed. R. Crim. P. 18; 28 U.S.C. § 3232. However, under 18 U.S.C. § 3237, "any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed." 18 U.S.C. § 3237(a). It is well established that a "conspiracy may be prosecuted in any district in which the agreement was formed or in which an act in furtherance of the conspiracy was committed." *United States v. Izegwire*, 371 F. App'x 369, 372 (4th Cir. 2010) (quoting *United States v. Gilliam*, 975 F.2d 1050, 1057 (4th Cir. 1992)). "[B]ecause proof of acts

[2] Columbus, Ohio actually falls within the United States District Court for the Southern District of Ohio.

[3] Although Borjas-Hernandez purports to challenge both the jurisdiction and venue it seems that his objection is with the Government's choice of venue, as United States District Courts plainly have original jurisdiction of all offenses against the laws of the United States. *See* 18 U.S.C. § 3231.

by one co-conspirator can be attributed to all members of the conspiracy," one co-conspirator's actions within a district may serve to establish venue for all of the defendants. *Id.* (citing *United States v. Snead*, 527 F.2d 590, 591 (4th Cir. 1975)); *see also United States v. Anderson*, 611 F.2d 504, 509 n.5 (4th Cir. 1979) (noting that "where a conspiracy is comprised of many transactions in various districts, venue as to all conspirators is proper in any district in which any at in furtherance of the conspiracy was committed by any of the conspirators"). Thus, "[w]hether a particular defendant was ever physically present in the district may be irrelevant to the issue of venue." *United States v. Buensalida*, 537 F. App'x 226, 229 (4th Cir. 2013); *see also United States v. Daniels*, No. 96-4641, 1997 WL 540901, at *2 (4th Cir. 1997). In order "[t]o establish venue, the government need only show that an act occurred in the district by a preponderance of the evidence." *United States v. Al-Talib*, 55 F.3d 923, 928 (4th Cir. 1995). "Acts in furtherance of a criminal conspiracy include exploits large and small, dealings that represent turning points in the conspiracy and those that merely enable it to continue its operations." *United States v. Smith*, 452 F.3d 323, 335 (4th Cir. 2006). Thus, "simple acts such as phone calls from a district can give rise to venue in conspiracy cases." *United States v. Day*, 700 F.3d 713, 727 (4th Cir. 2012); *see United States v. Perez-Mendez*, 162 F. App'x 207, 209 (4th Cir. 2006); *United States v. Mitchell*, 70 F. App'x 707, 711-12 (4th Cir. 2003).

Here, Borjas-Hernandez appears to argue that his conduct did not amount to a conspiracy in violation of 21 U.S.C. § 846, and therefore the phone calls made between West Virginia residents and other individuals to whom he distributed heroin in Columbus did not satisfy the venue requirements necessary for prosecution within the

Southern District of West Virginia. (ECF No. 129-1 at 21-22). As discussed above, to the extent Borjas-Hernandez's argument rests upon a claim of actual innocence of the conspiracy offense, it is foreclosed by the sworn statements he made as part of his guilty plea. *See supra* Part IV.A.

Moreover, despite Borjas-Hernandez's claim of ignorance regarding the ultimate destination of some of the heroin he distributed, the record is replete with testimony that Borjas-Hernandez was aware that the heroin was being transported and used in the Southern District of West Virginia.  During the plea hearing, Agent Bevins testified that Wendy Keller, Jordan's daughter, regularly traveled from Huntington, West Virginia to Columbus, Ohio to obtain heroin. (ECF No. 113 at 33). Ms. Keller informed authorities that "she first began dealing with her father and was later able to move her father out of the way and began to deal directly with the defendant and others," via phone calls with Borjas-Hernandez. (*Id.* at 34). "[E]ither the night before or the day of, she would make a phone call here in Southern West Virginia advising that she needed a quantity of heroin and that she would, in fact, be bringing others with her from West Virginia, Huntington, and she would go there, again make a second call when she got into the area, and she would speak to the defendant and/or somebody else using the phone and would sometimes meet the defendant or others." (*Id.*). Ms. Keller was therefore "very familiar with the defendant's voice on the phone." (*Id.* at 35). Despite Borjas-Hernandez's initial statement that he didn't know that the people to whom he was selling heroin were coming from West Virginia, (*Id.* at 25), he did confirm that Agent Bevins's description of his role in the conspiracy was substantially accurate. (*Id.* at 37-39).

At the sentencing hearing, Agent Bevins testified that Jordan's description of his transactions with Borjas-Hernandez were similar to those of Ms. Keller. Mr. Jordan would call Borjas-Hernandez and say, "My people from West Virginia are coming. I need to be ready." (ECF No. 114 at 18). He would be instructed to make a second call when the West Virginia purchasers arrived "and at that time they would instruct a place to meet. . . and then the person from West Virginia would get in the car with him or he would get in the car with Rick, drive to the target location, call Carlos for a second time, and they would send a runner to that location and provide them with the heroin." (*Id.*). Agent Bevins testified to personally witnessing an undercover buy from the organization, in which Mr. Jordan "made a phone call advising that his people from West Virginia was [sic] already in town and they needed to purchase some heroin." (*Id.* at 19). They were directed to a meeting location, after which "Mr. Jordan stepped out of the car, purchased a large quantity of heroin, . . . $900 worth, and returned back" to Agent Bevins' vehicle. (*Id.*). Agent Bevins added that "[o]n one occasion I called the telephone here in West Virginia, spoke to a subject that identified himself as Carlos, told him I was from West Virginia and I needed to purchase heroin. He instructed me when I got near Columbus, Ohio, I was to make a second call, much like Mr. Jordan did, and at that time he would direct me to another location." (*Id.* at 20-21). Agent Bevins then completed a controlled purchase of heroin pursuant to the instructions he received on the phone. (*Id.* at 21).

Melrose also testified at the sentencing hearing to his transactions with Borjas-Hernandez. He stated that "Every time I called I would say, 'Hey, this is Bobby. Some friends of mine from West Virginia are coming up. They got such-and-such amount of

money.' And he would say, 'Call me when they get there.' Then I would call him when they got there and he'd give me a place to meet him. And then I'd call him when I got to that place to let him know that I had arrived." (ECF No. 114 at 58). Melrose indicated that while working in his capacity as a middleman between Borjas-Hernandez and the people from West Virginia, he would set up transactions for "between seven hundred and a thousand dollars for each person that came up there," and that based upon his interactions with the West Virginia purchasers and the amount they were purchasing, it was his understanding that they were bringing heroin back to be resold and redistributed in the area. (*Id.* at 76-77).

Indeed, the District Court specifically found that Borjas-Hernandez "was at the head of this particular conspiracy, that it involved two intermediaries very directly – that would be Mr. Melrose and Mr. Jordan – and that they in turn were bringing to him, indirectly perhaps through runners, they were bringing to the defendant Mr. Frye, the Mays, Lockhart, a number of individuals who were – Miss Byars – who were frequently purchasing heroin from the defendant and bringing it back to West Virginia for resale." (*Id.* at 104-05). Given the testimony elicited at both Borjas-Hernandez's plea and sentencing hearings, it is evident that the Government's choice of venue was appropriate. Accordingly, Borjas-Hernandez's trial counsel did not err in failing to object to his prosecution in the Southern District of West Virginia.

### 2. Negotiation of Plea Agreement

Borjas-Hernandez argues that "trial counsel was ineffective for having the Movant plea[d] guilty to a crime for which the Movant is factually innocent, and that the Movant would have not pleaded guilty, and would have insisted in going to trial if it

wasn't for trial counsel's ineffective advice." (ECF No. 129-1 at 29). Borjas-Hernandez alleges that at the pre-trial hearing he "informed trial counsel Attorney Armengau that he was going to trial [sic] the case because [he] had evidence that he did not distribute heroin in Huntington, West Virginia, and did not sold [sic] the heroin which cause[d] the death of Patrick Byars, because the Movant was residing his native country Nayarit, Mexico." (*Id.* at 30). Borjas-Hernandez further argues that trial counsel provided ineffective assistance of counsel by (1) advising him to plead guilty even after Borjas-Hernandez "had explained to him that he only had a buyer/seller relationship with Jordan and Melrose," and (2) having movant to plea guilty to an Information relieving the United States from its constitutional duty of proving beyond reasonable doubt that the Movant was in fact responsible for the death of Patrick Byars. (*Id.* at 38).

In order to succeed on an ineffective assistance of counsel claim related to representation prior to entry of his guilty plea, a criminal defendant must demonstrate that his counsel's ineptitude substantially affected his decision to plead guilty. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Fabian*, 798 F.Supp.2d at 670. That is, the defendant must establish: "(1) that counsel's errors were below a standard of reasonable competence, and (2) that but for those errors, the defendant would not have pleaded guilty, but would have instead proceeded to trial. *United States v. Roberts*, Fed. Appx. 195, 196 (4th Cir. 2011) (restating *Hill v. Lockhart*, 474 U.S. at 59). However, counsel's performance must be assessed with "a context-dependent consideration of the challenged conduct as seen from counsel's perspective at the time," because "[i]t is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court,

23

examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Wiggins v. Smith,* 539 U.S. 510, 523, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

Here, Borjas-Hernandez asserts his "factual innocence" of the conspiracy, and asks the Court to find that trial counsel was ineffective for advising him to plead guilty in spite of his innocence. Borjas-Hernandez alleges that he never conspired with Jordan and Melrose to distribute drugs, and that they shared only a buyer/seller relationship. (ECF No. 129-1 at 31, 38). Nevertheless, he readily acknowledges that at the plea hearing, he explained in his own words why he was guilty of the charge contained in the Information. (*Id.* at 31-32). Borjas-Hernandez's sworn admissions and statements admitting guilt at the plea hearing "carry a presumption of verity" and "constitute a formidable barrier against any subsequent collateral proceedings." *Blackledge v. Allison,* 431 U.S. 63, 74 (1977). As discussed above, Borjas-Hernandez's claim of innocence runs counter to the evidence presented during the plea and sentencing hearings establishing a relationship and pattern of dealing with Jordan and Melrose that extended beyond a mere "buyer/seller" relationship, (ECF Nos. 113 at 31-38; 114 at 15-25, 57-67). Again, Borjas-Hernandez fails to refute his own testimony at the plea hearing regarding his role in the conspiracy with respect to the two brothers who served as sources of the heroin and directed him to distribute the heroin to various individuals throughout Columbus. (ECF No. 113 at 18-22). Likewise, Borjas-Hernandez fails to address the evidence reflecting that Borjas-Hernandez apparently managed multiple drug "runners" who transported heroin to various individuals pursuant to his instruction. (ECF Nos. 113 at 31, 35; 114 at 59, 62). Borjas-Hernandez's unsupported

24

after-the-fact assertion that he only treated Jordan and Melrose as users simply is not sufficient to establish that he was innocent of participating in a conspiracy to distribute heroin.

Moreover, although Borjas-Hernandez blames trial counsel for "having the movant plead guilty," there is no evidence or allegation of coercion or misconduct on the part of Mr. Armengau. To the contrary, at the plea hearing, Borjas-Hernandez acknowledged that nobody had forced, threatened, intimidated, or talked him into pleading against his will; that he was acting voluntarily and of his own free will in entering his guilty plea; that pleading guilty was his own idea; and that nobody had promised him anything or told him anything different from what was discussed during the plea hearing. (ECF No. 113 at 46). The only specific conduct Borjas-Hernandez attributes to trial counsel is that "Attorney Armengau informed [him] that he was going to relay [Borjas-Hernandez's] information to the United States to seek a plea agreement where the Movant was going to plea[d] guilty to an Information accepting responsibility for his action of distributing heroin in Columbus, Ohio to several drug addicts," and that "[a]fter several plea discussions with the United States, Attorney Armengau informed the Movant that the United States had agreed to dismiss the indictment if the Movant pleaded guilty to conspiring to distribute heroin to drug addicts in Columbus, Ohio, in exchange for a four (4) year sentence." (ECF No. 129-1 at 31).

It was not unreasonable for trial counsel to seek a plea agreement, given the Government's evidence tying Borjas-Hernandez to the conspiracy responsible for providing the heroin that resulted in the overdose deaths of Patrick Byars, Adam Johnson, and George Shore. (ECF No. 114 at 7-13). If convicted of the offense contained

in the original indictment, that is conspiracy to distribute 100 grams or more of heroin, which resulted in the death of an individual, Borjas-Hernandez would have faced a mandatory minimum sentence of 20 years imprisonment. 21 U.S.C. § 841(b)(1)(B)(i). By pleading guilty to the charge contained in the information, that is conspiracy to distribute 1 kilogram of heroin, Borjas-Hernandez was only subject to a mandatory sentence of 10 years imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(i). Moreover, by entering into a plea agreement, Borjas-Hernandez received a two-level adjustment decrease in offense level for his acceptance of responsibility, which he would not have received had he proceeded to trial. (ECF No. 114 at 109). This effectively lowered his sentencing range from "360 months to life" to "292 months to 365 months" imprisonment, and indeed Borjas-Hernandez was sentenced at the lowest end of the applicable range to 292 months imprisonment. (*Id.* at 109-110).

Although Borjas-Hernandez does not explicitly assert a claim of error regarding his potential sentence, the undersigned notes that during the Rule 11 plea colloquy, the District Court twice asked if he understood that by pleading guilty to distributing at least 1 kilogram of heroin, he was exposing himself to a mandatory prison term of at least 10 years, and Borjas-Hernandez responded affirmatively. (ECF No. 113 at 27-28, 40). Furthermore, Borjas-Hernandez acknowledged that the District Court could not determine his guideline range until a presentence report was completed; that his sentence could be different from any estimate his lawyer had given him; that despite the guidelines, the District Court could impose a sentence either more or less severe than the guidelines advised; and that even if Borjas-Hernandez did not like the sentence imposed, he would still be bound by his guilty plea. (*Id.* at 41-42). Accordingly, any

purported error attributed to trial counsel regarding advice on the length of Borjas-Hernandez's sentence was cured by the District Court during the plea hearing. *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (holding that "if the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant"); *see also United States v. Ellerby*, 492 F. App'x 398, 400 (4th Cir. 2012) (finding no prejudice where district court cured counsel's purported misadvice regarding sentencing).

Given the strength of the Government's case against Borjas-Hernandez, and the considerable benefit he received by pleading guilty, it was not unreasonable for trial counsel to negotiate a plea agreement on behalf of Borjas-Hernandez.

### 3. Sentence Enhancement Under U.S.S.G. § 2D1.1(a)

Borjas-Hernandez next argues that trial counsel provided ineffective assistance for failing to object to the District Court's application of U.S.S.G. § 2D1.1(a). (ECF No. 129-1 at 38-39). According to Borjas-Hernandez, "if Attorney Armengau would have assisted the Movant during the sentencing proceedings in arguing that Movant couldn't have provided the heroin because the Movant was at Mexico at the time, the result of the sentencing proceeding would have been different because the court would have rejected the application of the death enhancement guideline pursuant to U.S.S.G. § 2D1.1(a)(2). Borjas-Hernandez further asserts that trial counsel should have argued that he "was not subject to the death enhancement guideline" on the ground that his "offense of conviction," conspiracy to distribute 1 kilogram of heroin, did not establish that death

resulted from the use of the substance. Neither argument is persuasive.

Borjas-Hernandez's first claim of ineffective assistance is based upon an underlying argument that has already been addressed and rejected above. *See supra* Part IV.A. As discussed above, even if Borjas-Hernandez could have established that he was in Mexico on the date that Ms. Byars purchased the heroin that resulted in her husband's death, U.S.S.G. § 2D1.1(a) would still have been applicable due to his involvement in the conspiracy. *See Harris*, 1990 WL 27340, at *8. Accordingly, trial counsel was not ineffective for failing to raise a nonmeritorious argument at sentencing.

Borjas-Hernandez's second claim of ineffective assistance is also unsupported by Fourth Circuit precedent. In his memorandum, Borjas-Hernandez cites *United States v. Greenough*, 669 F.3d 567 (5th Cir. 2012), in support of his claim that the application of § 2D1.1(a)(2) was unwarranted in his case because his "offense of conviction" did not "establish[ ] that death resulted from the use of the substance." (ECF No. 129-1 at 41). In *Greenough*, the Fifth Circuit Court of Appeals held "that U.S.S.G. § 2D1.1(a)(2) should not have applied to [the defendant] because her indictment did not address, and she therefore did not plead guilty to, [an individual's] death." *Greenough*, 669 F.3d at 575. However, *Greenough* is non-binding on the Fourth Circuit, and such an argument was unlikely to have been successful. *See United States v. Banks*, 40 F. App'x 736, 738 (4th Cir. 2002) ("Under the Guidelines a defendant's sentence range is determined not only according to the conduct of the offense of conviction, but also from 'relevant conduct' that was 'part of the same course of conduct or common scheme or plan as the offense of conviction.'"); *see also United States v. Bayles*, Nos. 91-5697, 91-5713, 1993 WL 46892, at *1 (4th Cir. Feb. 12, 1993) (upholding upward departure under U.S.S.G. § 5K2.1 for

28

resulting death, despite defendant's conviction on a single conspiracy count); *Harris*, 1990 WL 27340, at *8 (upholding application of U.S.S.G. § 2D1.1(a)(2) where defendants were convicted of conspiracy and attempt to distribute narcotics, continuing criminal enterprise, distribution and possession with intent to distribute narcotics, and aiding and abetting); *United States v. Carrington*, 57 F.Supp.2d 345, 354 (W.D. Va. 1999) ("The court may look to the conduct surrounding the offense of conviction in fashioning an appropriate sentence, regardless of whether the defendant was ever charged with or convicted of that conduct and regardless of whether he could be.") (internal quotations omitted), vacated on other grounds by *Carrington v. United States*, 531 U.S. 1062, 121 S.Ct. 750, 148 L.Ed.2d 653 (2001). Accordingly, trial counsel was not unreasonable for failing to raise this argument at sentencing.

Therefore, the undersigned **FINDS** that Borjas-Hernandez has failed to establish that he received ineffective assistance of counsel at the pre-trial, pleading, or sentencing, stages of his criminal proceedings.

### C. Appellate Counsel

Finally, Borjas-Hernandez argues that he received ineffective assistance of counsel on direct appeal because his appellate counsel "did not speak in Spanish and the Movant did not speak in English" and "due to this lack of communication on the part of [counsel] the Movant could not discuss the issues that [he] could have successfully advance[d] on appeal." (ECF No. 129-1 at 41). Specifically, Borjas-Hernandez alleges that appellate counsel (1) "failed to properly investigate that Movant's criminal records revealed that [he] was only 15 years old and residing in Mexico when the United States was alleging that Melrose and [he] began their distribution agreement in 2001"; (2)

29

failed to appeal the application of U.S.S.G. § 2D1.1(a)(2) based upon the Fifth Circuit's holding in *Greenough*; and (3) failed to adequately investigate and retrieve evidence establishing his "factual innocence" of the death of Patrick Byars. (*Id.* at 42-43).

The standard for ineffective assistance of appellate counsel is generally the same as for trial counsel. *See Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000). In order to show ineffective assistance of appellate counsel, Belcher must satisfy the two-part test under *Strickland. See Evitts v. Lucey*, 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). That is, he must demonstrate that "counsel was objectively unreasonable" in failing to file a merits brief addressing a nonfrivolous issue and that there is "a reasonable probability that, but for his counsel's unreasonable failure. . . , he would have prevailed on his appeal." *Robbins*, 528 U.S. at 285-86.

On review, appellate counsel is accorded the "presumption that he decided which issues were most likely to afford relief on appeal." *Pruett v. Thompson*, 996 F.2d 1560, 1568 (4th Cir. 1993). Moreover, "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal." *Bell*, 236 F.3d at 164. Instead, "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." *Jones v. Barnes*, 463 U.S. 745, 752, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. South Carolina*, 882 F.2d 895, 899 (4th Cir. 1989) (quoting *Smith v. Murray*, 477 U.S. 527, 536, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986)). Although it is "still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim" on direct appeal, demonstrating that counsel was

30

incompetent for failing to do so will be difficult. *Robbins*, 528 U.S. at 288. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986).

With the exception of his first argument, Borjas-Hernandez's claims of error regarding appellate counsel's performance are essentially the same as those attributed to trial counsel, and have been conclusively rejected above. *See supra* Part IV.A and B. Moreover, the Fourth Circuit specifically reviewed the procedural and substantive reasonableness of Borjas-Hernandez's sentence on appeal, including whether the District Court erred in calculating the advisory Guidelines range. In do so, the Fourth Circuit explicitly considered both the base offense level determined by the District Court under U.S.S.G. § 2D1.1(a)(2) and the enhancement applied for Borjas-Hernandez's role as a leader or organizer of the heroin trafficking organization. The Fourth Circuit found the sentence to be properly calculated and thus presumptively reasonable.

With respect to Borjas-Hernandez's claim that appellate counsel failed to ascertain and argue that he was only 15 years old and residing in Mexico in 2001, Borjas-Hernandez offers no evidence whatsoever to establish that he was in fact residing in Mexico in 2001. Moreover, he fails to explain how this might have had any bearing whatsoever on his conviction or sentence, considering that Borjas-Hernandez pleaded guilty to, and was convicted of participating in a conspiracy between the years 2003 and 2008. (ECF Nos. 74; 77 at 9; 113 at 18-19). During the sentencing hearing, Melrose testified that he first met Borjas-Hernandez "through a couple of other acquaintances" in "2001, maybe" during which time he would purchase heroin from Borjas-Hernandez's

acquaintances. (ECF No. 114 at 52-53). He then became reacquainted with Borjas-Hernandez in 2003 or 2004, following a short term of imprisonment. (*Id.* at 56). Even if Borjas-Hernandez had presented evidence regarding his whereabouts in 2001, at best this information would have served to undermine the credibility of Melrose's testimony. However, the remainder of Melrose's testimony regarding Borjas-Hernandez's role in the conspiracy between 2003 and 2008 was largely consistent with the testimony of Agent Bevins, Michelle Byars, and Officer Castle. (*Id.* at 53-77). Furthermore, in reviewing a defendant's sentence on direct appeal, the court of appeals is tasked with "giving due regard for the opportunity of the trial court to judge the credibility of the witnesses, accepting the trial court's findings of fact unless clearly erroneous, and giving due deference to the trial court's application of the facts to the guidelines." *United States v. Smith*, No. 93-5977, 1994 WL 470182, at *1 (4th Cir. Sept. 1, 1994) (citing 18 U.S.C. § 3742(e)). Thus, even if appellate counsel had argued on appeal that Borjas-Hernandez was 15 years old and residing in Mexico in 2001, there is simply not a reasonable probability that the outcome of Borjas-Hernandez's appeal would have been different.

Therefore, the undersigned **FINDS** that Borjas-Hernandez has failed to demonstrate that he received ineffective assistance of appellate counsel.

## VI.   <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** the following:

1. Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 (ECF No. 128) be **DENIED**; and

2. This civil action be **DISMISSED, with prejudice,** and removed

from the docket of this Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Movant, Respondent, and any counsel of record.

**FILED**: March 20, 2014.

Cheryl A. Eifert
United States Magistrate Judge

33